ROBERTSON, Justice:
The appellant, Robert Prestage, a 46-year-old white man, was convicted in the Circuit Court of Rankin County of raping a 9-year-old black girl. The jury was unable to agree on the punishment, and the court thereupon sentenced the defendant to life in the state penitentiary.
The only errors assigned were:
1.
The Court erred in denying Appellant’s motion for a new trial.
2.
The Court erred in allowing Dr. Schuster to testify that she was injured in some sort of sexual activity over the objections of appellant.
3.
The Court erred in allowing Dr. Schuster to testify as to what the report of the Pathologist, Dr. Sampson, showed, all over the objections of appellant.
The crime was committed about 2:30 p. m. on October 31, 1970. Dr. Richard Schuster personally examined the victim about 5:10 p.m. on that same date, in the emergency room of the Rankin General Hospital at Brandon, Mississippi. His examination included the preparation of two or three slides of material found in close proximity to the vagina. The slides were carried by Dr. Schuster’s nurse to the pathology department of the Rankin General Hospital. Dr. R. F. Samson signed the official hospital laboratory report recit *883 ing the results of the microscopic examination as being: “Sperm present Red Cells Present.” A copy of this signed report was sent to Dr. Schuster.
Dr. Samson, the pathologist, was in Florida at the time of the trial, and Dr. Schuster, after testifying in detail as to his personal observations was allowed to read and explain the pathologist’s official hospital report. This hospital laboratory report was also admitted into evidence.
The appellant contends that Dr. Schuster based his findings on the lab report made by another doctor who was not produced as a witness and, therefore, not available for cross-examination by appellant. Dr. Schuster answered in this way:
“Q. Doctor, without going into the findings of the pathologist do you have a medical opinion as to whether or not what happened to her was sexual activity?
“BY JUDGE BROOME: We object to that.
“BY THE COURT: Objection overruled.
“A. I do. I felt that the girl had been injured in some sort of sexual activity with the obvious inability of not being able to be penetrated.”
“Q. Doctor, earlier you testified as to your medical opinion that sexual activity had happened which caused this abrasion. Did you base this on this report?
“A. I based it on the total picture viewing the area and knowing human physiology and human anatomy.”
The appellant contends that Simmons v. State, 105 Miss. 48, 61 So. 826 (1913), controls. We do not agree. The factual differences become apparent by noting the opinion in Simmons wherein this Court said:
“The alleged victim did not testify before the jury, but the theory of the defense was that the girl was not ravished by defendant, or any one else, but the injury found by physicians was caused by the girl falling across a barbed wire fence. This theory was proven by two alleged eyewitnesses — the sons of appellant and the brothers of the alleged victim. The state contradicted this evidence by the testimony of two physicians who examined the girl; they testifying that the wounds and lacerations of the child’s genital organs could not have been made in the manner described by defendant and his witnesses. By witnesses, the testimony of defendant’s witnesses was discredited, and, if believed, the evidence for defendant was thus completely destroyed.
“Various other damaging and inculpa-tory circumstances were proven by the state. With the record in this state, the court permitted the physicians to testify that the child, five and seven days after the date of the alleged outrage, told them she had been raped. This was hearsay evidence of the purest type. Under no phase of the case could it be claimed to be a part of the res gestae; nor was it admissible to corroborate or support the evidence of the victim, for the reason that she did not testify at all.” 105 Miss, at 56, 61 So. at 827.
In the case at bar, the victim complained immediately and was personally examined by Dr. Schuster within three hours of the act. The victim testified and positively identified the defendant as her assailant. Robert Mapp, a thirteen year old boy, saw the defendant catch Betty Ann and carry her into the woods; he followed and saw Betty Ann on the ground and the defendant “sitting straddle of her.” The sole defense of the appellant was an alibi; he claimed that he was somewhere else at the time the crime was committed. There was no suggestion whatsoever that the injuries to the child resulted from a fall or accident.
Two eyewitnesses testified as to the commission of the crime and also positively identified the appellant as the perpetrator. Appellant’s automobile was posi *884 tively identified and placed at the scene of the crime by at least six other witnesses. The victim reported the act immediately after it happened and the doctor examined the victim within 3 hours after the commission of the act. The doctor based his testimony on his personal examination and knowledge. Without the pathologist’s report, the evidence was conclusive and proved beyond a reasonable doubt that the crime of rape had been committed. Moreover, the defendant did not deny that the victim had been raped; he merely contended that he was elsewhere and did not commit the crime. So even if the admission of the official hospital record were error (and we do not pass on this question), it was harmless error. Applying the test outlined in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), we have no hesitancy in declaring “that it was harmless beyond a reasonable doubt.”
The jury was fully justified in returning a guilty verdict; the crime and the identity of the perpetrator were proved beyond a reasonable doubt and to a moral certainty. The verdict of the jury and the judgment of the trial court are affirmed.
Affirmed.
GILLESPIE, C. J., and JONES, PATTERSON and INZER, JJ„ concur.